UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| ANITA TRILLO, <br><br> *Plaintiff*, <br><br> v. <br><br> MARTIN O'MALLEY, *Commissioner of Social Security Administration*, <br><br> *Defendant*. | §<br>§<br>§<br>§<br>§  EP-23-CV-00320-ATB<br>§<br>§<br>§<br>§<br>§ |

## **MEMORANDUM OPINION AND ORDER**

This is a civil action seeking judicial review of an administrative decision. Pursuant to 42 U.S.C. § 405(g), Plaintiff Anita Trillo, the claimant at the administrative level, appeals from the final decision of Defendant Martin O'Malley, the Commissioner of the Social Security Administration, ("Commissioner") denying her claim for supplemental security income ("SSI") benefits based on disability under Title XVI of the Social Security Act, 42 U.S.C. § 1382, *et seq*. The parties consented to have a United States magistrate judge conduct all proceedings, including trial and the entry of final judgment. For the reasons that follow, the Court finds that the Commissioner's decision should be affirmed.

### I.   BACKGROUND

On May 28, 2021, Trillo applied for SSI benefits, alleging disability beginning on April 10, 2021. Aged 59 when she applied, Trillo alleged disability based on degenerative disc disease, decreased range of motion of her fingers, decreased visual acuity, pulmonary issues, transient ischemic attack, diabetes, depression, and anxiety.[1] She has a high school education,

---

[1] Tr. of Admin. R. [hereinafter, cited as "Tr."] at 43–44, 193.

and in the past, she worked as, among other positions, a cashier, household-appliance salesperson, cart attendant, warehouse packer, and caregiver.[2]

Trillo's application was denied initially on January 3, 2022, and upon reconsideration on June 6, 2022.  Thereafter, Trillo requested a hearing before an Administrative Law Judge ("ALJ").  On February 22, 2023, ALJ Melinda Kirkpatrick held a hearing; at the hearing, Trillo, represented by her attorney, and Rachel Hawkins, a vocational expert ("VE"), testified.  On April 11, 2023, the ALJ denied her application in a written decision.  Two days later, Trillo appealed to the Social Security Appeals Council for review of the ALJ's decision.  On July 7, 2023, the Appeals Council denied her request for review, and thereby the ALJ's decision became the final decision of the Commissioner.[3]

On August 24, 2023, Trillo, proceeding *in forma pauperis*, brought this action seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  On January 10, 2024, Trillo filed her opening brief, requesting that the Commissioner's decision be vacated and her claims for SSI benefits be remanded for further administrative proceedings.  Pl.'s Br. at 16, ECF No. 9.  On March 6, 2024, the Commissioner filed a response in support of his decision.  Br. in Supp. of Comm'r's Decision [hereinafter, Def.'s Resp.], ECF No. 11.  Trillo filed a reply on March 20, 2024.  Pl.'s Reply Br. [hereinafter, Pl.'s Reply], ECF No. 12.

## II.   THE SEQUENTIAL EVALUATION PROCESS AND THE ALJ'S FINDINGS AND CONCLUSIONS

To be eligible for SSI based on disability, the claimant must be "disabled" within the meaning of the Social Security Act.  42 U.S.C. § 1382(a); *see also Lyon v. Bowen*, 802 F.2d 794,

---

[2] *Id.* at 43, 46–52, 63–64, 268.

[3] *See Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002) ("The ALJ's decision thus became the Commissioner's final and official decision when the Appeals Council denied [the claimant's] request for review on the merits.").

796 (5th Cir. 1986) ("To be eligible for SSI an individual must be aged, blind, or disabled as defined in 42 U.S.C. § 1382c and have income and resources below the levels specified in 42 U.S.C. § 1382a."). Disability is defined as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 1382c(a)(3)(A). The "claimant has the burden of proving [s]he suffers from a disability." *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018).

To determine disability, the Commissioner uses a sequential, five-step approach, which considers:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017) (cleaned up); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[4] "The burden of proof is on the claimant at the first four steps," *Kneeland*, 850 F.3d at 753, and if she gets past these steps, "the burden shifts to the Commissioner on the fifth step to prove the claimant's employability," *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). A determination at any step that the claimant is disabled or is not disabled "ends the inquiry." *Id.*

---

[4] "'The relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income.'" *Undheim v. Barnhart*, 214 F. App'x 448, 449 n.1 (5th Cir. 2007) (quoting *Davis v. Heckler*, 759 F.2d 432, 435 n.1 (5th Cir. 1985)). Part 404 of 20 C.F.R. relates to disability insurance benefits, *see* 20 C.F.R. § 404.1, whereas Part 416 relates to supplemental security income, *see* 20 C.F.R. § 416.101. As relevant here, the regulations are not materially different, and so, hereinafter, the Court may cite to Parts 404 and 416 interchangeably. *See Sun v. Colvin*, 793 F.3d 502, 506 n.1 (5th Cir. 2015).

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity ("RFC"). *Kneeland*, 850 F.3d at 754. "The claimant's RFC assessment is a determination of the most the claimant can still do despite . . . her physical and mental limitations and is based on all relevant evidence in the claimant's record." *Id.* (brackets omitted); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). "The RFC is used in both step four and step five to determine whether the claimant is able to do her past work or other available work." *Kneeland*, 850 F.3d at 754.

Here, ALJ Kirkpatrick evaluated Trillo's claims for SSI benefits pursuant to the five-step sequential evaluation process mentioned above. At step one, the ALJ found that Trillo has not engaged in substantial gainful activity since May 28, 2021, the date of her application. Tr. at 16. At step two, the ALJ determined that Trillo has several "severe" physical impairments, including degenerative disc disease of the lumbar spine, right hand deformity of the 3rd and 4th fingers, decreased visual acuity, hypertension, transient ischemic attack, diabetes, and obesity, but that her mental impairments of depression and anxiety are "non-severe." *Id.* at 17–18. At step three, the ALJ found that Trillo does not have an impairment or combination of impairments that meets or medically equals a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1 (the Listing of Impairments), for presumptive disability. *Id.* at 18.

Next, before going to step four, the ALJ determined that Trillo retains the RFC to perform "medium work" as defined in 20 C.F.R. § 416.967(c), subject to the following limitations:

> [S]he can have no climbing of ladders, ropes, and scaffolds; she can frequently climb ramps and stairs; and she can frequently stoop, kneel, crouch, and crawl. She can have no exposure to unprotected heights and no exposure to hazardous, moving machinery. Right-hand handling, fingering, feeling is reduced to frequent. Foot control operation is reduced to frequent. She can have no nighttime driving of

motor vehicles. She must avoid concentrated exposure to extreme heat, cold, noise, and vibration.

Tr. at 25. The ALJ did not include any mental limitations in the RFC.

At step four, the ALJ found that, consistent with her RFC, Trillo can perform her "past relevant work" as a cashier II (DOT 211.462-010) and as a household appliance salesperson (DOT 270.357-034), as those jobs are generally performed in the national economy. Tr. at 26–27. In the alternative, at step five, the ALJ found that considering Trillo's age, education, work experience, and RFC, Trillo is capable of making a successful adjustment to other jobs—for example, night cleaner (DOT 358.687-010), floor waxer (DOT 381.687-034), and printed circuit board assembler (DOT 726.687-026)—that exist in significant numbers in the national economy. *Id.* at 27–28. The ALJ concluded that Trillo is not disabled within the meaning of the Social Security Act, *id.* at 28, and denied her application for SSI benefits, *id.* at 11.

### III.   STANDARDS FOR JUDICIAL REVIEW

Judicial review, under 42 U.S.C. § 405(g), of the Commissioner's decision denying benefits is "highly deferential." *Garcia*, 880 F.3d at 704. Courts review such a decision "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (quotation marks and citation omitted). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sun*, 793 F.3d at 508.

In applying the "substantial evidence" standard, "the court scrutinizes the record to determine whether such evidence is present," *id.*, but it may not "try the issues *de novo*" or "reweigh the evidence," *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). "[N]or, in the event of evidentiary conflict or uncertainty," may the court substitute its judgment for the

Commissioner's, "even if [it] believe[s] the evidence weighs against the Commissioner's decision." *Garcia*, 880 F.3d at 704.  "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Sun*, 793 F.3d at 508.  "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision."  *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016).

## IV. DISCUSSION

Trillo's arguments turn on the ALJ's findings in her analysis of the psychiatric-review technique (PRT) described in 20 C.F.R. § 416.920a and her assessment of Trillo's RFC.  Before addressing Trillo's specific arguments, the Court briefly discusses the PRT and the relevant aspects of the RFC assessment.

At steps two and three of the sequential analysis, ALJs utilize the PRT to evaluate the severity of a claimant's mental impairment.  The PRT requires the ALJs to rate the degree of the claimant's limitations resulting from a mental impairment in four broad functional areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.  20 C.F.R. § 416.920a(c)(3).  These functional areas are also known as the "Paragraph B" criteria. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1324 (11th Cir. 2021).[5]  A five-point scale is used for rating the limitations: "[n]one, mild, moderate, marked, and extreme." 20 C.F.R. § 416.920a(c)(4).  For example, a "mild" rating indicates that the claimant's functioning is "slightly limited," and a "moderate" rating

---

[5] The four functional areas are also evaluated under the Paragraph B criteria for measuring a mental disorder's severity for purposes of determining whether the disorder equals a mental impairment listed in the Listing of Impairments.  20 C.F.R. § 404, Subpt. P, App. 1, §§ 12.00(A)(2)(b), 12.00(E)(1)–(4); *see also* SSR 96-8p, 1996 WL 374184, at *4 (S.S.A. July 2, 1996) ("The psychiatric review technique described in 20 CFR 404.1520a and 416.920a . . . requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the '[P]aragraph B' . . . criteria of the adult mental disorders listings.").

indicates a "fair" limitation. *Id*. § 404, Subpt. P, App. 1, § 12.00(F)(2)(b), (c). As relevant here, if the claimant's limitations in all four areas are rated "none" or "mild," then the impairment is "not severe" unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities. *Id*. § 416.920a(d)(1).

In determining the claimant's mental RFC, the ALJs must assess the claimant's abilities to carry out certain mental activities "in a work setting" such as "understanding, remembering, and carrying out instructions" and "responding appropriately to supervision, co-workers, and work pressures." 20 C.F.R. § 416.945(c); *see also Anderson v. Colvin*, 514 F. App'x 756, 763 (10th Cir. 2013) ("As part of the RFC assessment, the ALJ must consider the claimant's work-related mental limitations, such as the 'ability to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.'" (brackets omitted) (quoting SSR 96-8p, 1996 WL 374184, at *6)).

These work-related mental activities considered in assessing RFC overlap with some of the illustrative mental functions[6] listed in the Paragraph B criteria. *See Rules & Regulations, Revised Medical Criteria for Evaluating Mental Disorders*, *Final Rules*, 81 Fed. Reg. 66138, 66145, 2016 WL 5341732 (S.S.A. Sept. 26, 2016) (explaining that the content of the fourth

---

[6] For example, the area of "concentrate, persist, or maintain pace" under the Paragraph B criteria, "refers to the abilities to focus attention on work activities and stay on task at a sustained rate." Examples include:

> Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

20 C.F.R. § 404, Subpt. P, App. 1, § 12.00(E)(3). "These examples illustrate the nature of this area of mental functioning." *Id.*

Paragraph B criterion, *i.e.*, "adapt or manage oneself," "is not new or different from what adjudicators are already accustomed to evaluating" and pointing out that the "adjudicators already consider a person's ability to respond appropriately to work pressures when they . . . determine the person's [RFC] for work activity" (citing 20 C.F.R. § 416.945(c))).[7] Likewise, some of the evidence considered in assessing the mental RFC and in rating the mental limitations under the PRT overlaps. *Craft v. Astrue*, 539 F.3d 668, 675 (7th Cir. 2008).

Here, at step two, the ALJ found that Trillo's depression and anxiety are non-severe mental impairments. Tr. at 17. In making that finding, the ALJ applied the PRT and found that Trillo's mental impairments cause no more than "mild" limitation in any of the four Paragraph B functional areas. *Id.* at 18. Specifically, she rated Trillo's limitations as: "mild" in the "understanding, remembering, or applying information" area; "none" in the "interacting with others" area; "mild" in the "concentrating, persisting, or maintaining pace" area; and "mild" in the "adapting or managing oneself" area. *Id.* at 17–18. And before addressing steps four and five, the ALJ determined Trillo's RFC, *see ante*, which does not include any mental limitations.

Trillo does not argue that the ALJ's ratings of Trillo's limitations in the four broad functional areas or the ALJ's RFC determination are not supported by substantial evidence.[8] *See Webster*, 19 F.4th at 718, *supra* (explaining that judicial review is limited to two inquiries:

---

[7] Effective January 17, 2017, the Social Security Administration promulgated a new set of the four broad functional areas as provided in the current version of 20 C.F.R. § 416.920a(c)(3) and the corresponding Paragraph B criteria as provided in the current version of the Listing of Impairments in 20 C.F.R. § 404, Subpart P, Appendix 1, § 12.00(E): to repeat, (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. Under the prior versions of the regulation and the Listing Impairments, the broad functional areas were: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *E.g.*, 20 C.F.R. § 404.1520a(c)(3) (Nov. 11, 2010); *id.* § 404, Subpart P, App. 1, § 12.00(C) (Sept. 29, 2016).

[8] In her reply brief, Trillo mentions in passing that the Commissioner's position that the RFC constructed by the ALJ is supported by substantial evidence is "unpersuasive," Pl.'s Reply at 1, but she fails to develop this argument.

whether substantial evidence supports the ALJ's decision and whether the ALJ used the proper legal standards). Instead, Trillo assigns two legal errors: The ALJ erred as a matter of law (1) by failing to account for any mental limitations in the RFC and (2) by failing to expressly explain why such limitations were not included in the RFC. Pl.'s Br. at 6.

In her first assignment of error, Trillo argues that the ALJ erred because despite assessing "mild" limitations in three of the four broad functional areas at step two, the ALJ failed to incorporate her "mild" or corresponding mental limitations in the RFC. Pl.'s Br. at 14; Pl.'s Reply Br. at 1. In other words, Trillo argues, simply because the ALJ rated as "mild" Trillo's mental limitation in a PRT or Paragraph B functional area at step two, the ALJ was required to incorporate corresponding mental limitations in the RFC. The Commissioner responds that an ALJ is under no obligation to include mental limitations in an RFC assessment simply due to the presence of "mild" Paragraph B findings. Def.'s Resp. at 6. He adds that no agency regulation or policy requires that certain limitations be assessed in the RFC based on a preliminary finding of mild limitations in the broad areas of mental functioning under the PRT. *Id.* at 2, 9.

Trillo does not cite any authority that supports her argument that a "mild" rating under the PRT must be accounted for or reflected in the RFC.[9] According to a policy statement by the agency, "the limitations identified in the "[P]aragraph B" . . . criteria are not an RFC assessment." SSR 96-8p, 1996 WL 374184, at *4. "[M]ental limitations noted in the threshold inquiry at steps two and three do not apply at later steps" of the sequential analysis. *Suttles v. Colvin*, 543 F. App'x 824, 826–27 (10th Cir. 2013) (rejecting the objection that the ALJ omitted

---

[9] Indeed, Trillo defeats her own argument when she states, later in her brief, that "[a]n ALJ does not commit legal error by declining to include mental limitations in the RFC 'so long as the ALJ considered the limiting effects and restrictions of all impairments in the RFC analysis, even those impairments that are non-severe.'" Pl.'s Br. at 12 (emphasis added) (quoting *Martha L. v. Saul*, No. 1:20-CV-00003-H-BU, 2021 WL 3610316, at *5 (N.D. Tex. July 27, 2021), *R&R adopted*, 2021 WL 3604082 (N.D. Tex. Aug. 13, 2021)).

from the RFC assessment a mild limitation found at step two regarding concentration, persistence, or pace); *see also Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013) (stating that the ALJ "was under no obligation to include limitations . . . in [the claimant's] RFC based solely on his finding that she had 'moderate difficulties' in social functioning as part of the distinct step-three analysis"); *Gunderson v. Astrue*, 371 F. App'x 807, 809 (9th Cir. 2010) (concluding "the ALJ did not commit a legal error by omitting functional limitations related to [the claimant's] anxiety . . . from the RFC simply because she determined [it was] severe for purposes of step two").[10]  The Court therefore overrules Trillo's first assignment of error.

In her second assignment of error, Trillo variously argues that the ALJ failed to "consider" her mental limitations in assessing the RFC, and if the ALJ did consider them, she failed to adequately "explain" why the RFC should not include such limitations.  For example, Trillo argues that the ALJ erred because in determining Trillo's RFC, the ALJ failed to explain or evaluate the mental limitations that the ALJ rated as mild at step two.  Pl.'s Br. at 14; *see also, e.g.*, *id.* at 11 (arguing that the ALJ's RFC "discussion does not address or even mention [Trillo]'s mental limitations"); *id.* at 14 (arguing that the ALJ never provided an "explicit conclusion" about how these mental limitations affect her ability to perform job-related tasks).  Trillo adds that it is impossible to determine how, or if at all, the ALJ considered her mental limitations in the RFC analysis and suggests that "without more of an explanation as to how [Trillo]'s mild mental limitations" in the three functional areas factored into the ALJ's RFC formulation, the Court cannot trace the ALJ's path of reasoning.  *Id.* at 12.

---

[10] *Cf. also Vasquez v. O'Malley*, No. 24-50233, 2024 WL 4381269, at *2 (5th Cir. Oct. 3, 2024) (unpublished) (rejecting plaintiff's argument the ALJ erred because the RFC assessment did not directly connect her limitations from a physical impairment that the ALJ assessed as "severe" at Step Two and stating: "But 'having a severe impairment is not a sufficient condition for receiving benefits under the Commissioner's regulations.' It merely advances the disability determination from Step Two to Step Three." (quoting *Shipley v. Sec'y of Health & Hum. Servs.*, 812 F.2d 934, 935 (5th Cir. 1987))).

In assessing RFC, an ALJ must "consider . . . all medically determinable impairments," whether "severe" or not. 20 C.F.R. § 416.945(a)(2). The ALJ must consider "all . . . relevant medical and other evidence" in the record, including the claimant's "descriptions . . . of [her] limitations from [her] impairment(s)" and "any statements about what [the claimant] can still do that have been provided by medical sources." *Id.* § 416.945(a)(3). However, in her written decision, the ALJ is not required "to comment on every piece of evidence." *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010); *see also Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005) ("That the ALJ did not specifically cite each and every piece of medical evidence considered does not establish an actual failure to consider the evidence."). Likewise, the ALJ need not "follow formalistic rules in h[er] articulation" of her findings, *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) (rejecting plaintiff's "persistent[] argu[ment] that the ALJ's failure to explain his findings . . . should constitute reversible error"), but need "only . . . build an accurate and logical bridge between the evidence and the final determination," *Price*, 401 F. App'x at 986. In reviewing an ALJ's written decision, "common sense, not technical perfection, is our guide." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required.").

Here, the ALJ's written decision reveals that she expressly considered and cited various pieces of subjective evidence and objective medical evidence that are relevant to Trillo's mental impairments and limitations. In analyzing the PRT, she considered Trillo's subjective statements about her mental limitations but contrasted them against the relevant objective medical evidence. Tr. at 17–18; *see also Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992) ("[S]ubjective evidence need not be credited over conflicting medical evidence."); *Muse v. Sullivan*, 925 F.2d

785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence."). For example, in rating as "mild" Trillo's mental limitation in the functional area of "concentrating, persisting, or maintaining pace," she wrote:

> The claimant reported difficulty concentrating and completing tasks, but she stated that she could count change and read recreationally (Exhibit 7E, pp. 7-8). While the evidence has shown reserved mood and mildly constricted affect, it generally shows normal attention and concentration, no hyperactivity, appropriate mood, no perceptual abnormalities, and no noted abnormalities in thought content (Exhibits 1F, pp. 5-6; 3F, pp. 3-4; 4F, pp. 8, 30; 5F, p. 6).

Tr. at 17. The cited evidence includes a functional report that Trillo completed in July 2021 (Exhibit 7E); the report of a psychological consultative examination of Trillo that James Schutte, Ph.D., performed in October 2021 (Exhibit 3F); the report of a physical consultative examination (which included a neurological examination) of Trillo that Alejandro Robles, M.D., performed in October 2021 (Exhibit 1F); and treatment/consultation notes from a hospital that Trillo visited between August 2022 to January 2023 (Exhibits 4F and 5F).

Then, under the RFC analysis section of her written decision, the ALJ considered objective medical evidence relevant to Trillo's mental impairments and limitations—in evaluating the persuasiveness of Schutte's opinions and the state agency psychological consultants' administrative findings.[11] *See* 28 C.F.R. § 416.920c (requiring ALJs to "evaluate the persuasiveness of medical opinions and prior administrative medical findings" and to articulate the evaluation).

Specifically, in finding persuasive the state agency psychological consultants' findings that Trillo has no more than mild limitations in the four areas of mental functioning,[12] the ALJ

---

[11] Trillo does not argue that substantial evidence does not support the ALJ's persuasiveness determinations.

[12] The state agency psychological consultants found that Trillo's mental limitations are "mild" in the functional area of "understanding, remembering, or applying information," "none" in the area of

explained:

> the . . . limitations [assessed by the consultants] are consistent with the evidence showing reserved mood and mildly constricted affect, while generally showing normal memory, unremarkable thought process, average intelligence, clear and comprehensible speech, good eye contact, appropriate mood, cooperative behavior, normal attention and concentration, no hyperactivity, no perceptual abnormalities, no harmful ideations, adequate grooming, full orientation, and no notable loss of judgment (Exhibits 1F, pp. 5-6; 3F, pp. 3-4; 4F, pp. 8, 30; 5F, p. 6).

Tr. at 25. In so explaining, the ALJ cited the same set of objective evidence that she cited in her PRT analysis. The Court has carefully reviewed the cited exhibits and finds that the ALJ's characterization of the evidence in these exhibits and the inferences she drew therefrom are reasonable. For example, the ALJ's deduction that Trillo has "normal attention and concentration"—for which she cited Schutte's examination report, *id*. at 25 (citing Ex. 3F, pp. 3-4)—is supported by Schutte's statements that Trillo's "[a]ttention and concentration appeared within normal limits during the interview, as she was able attend to questions and focus on the flow of the evaluation" and that her "attention and concentration were measured to be in the average range," *id*. at 362–63 (*i.e*., Ex. 3F, pp. 3-4).

Turning to Schutte's report, the ALJ recounted Schutte's opinion that Trillo's "ability to reason seems mildly impaired due to depression and anxiety, and her ability to make occupational, social, and personal adjustments seems moderately impaired due to depression and anxiety." Tr. at 363–64. However, she found this opinion unpersuasive because, she explained, the opinion is inconsistent with Schutte's examination findings. *Id*. at 25. Moreover, to the extent that Schutte intended this opinion to represent "more than mild limitations in the four areas of mental functioning," the ALJ continued, that assessment is inconsistent with other

---

"interacting with others," "none" in the area of "concentrating, persisting, or maintaining pace," and "mild" in the area of "adapting or managing oneself." Tr. at 77, 86. The consultants did not make any findings about Trillo's mental RFC. *See id.* at 80 (noting "No MRFCs are associated with this claim"); *id*. at 88 (same).

evidence of record. *Id.* In support of her persuasiveness analysis, the ALJ cited some of the same evidence that she considered in her PRT analysis, including Dr. Robles's report and the hospital treatment/consultation notes. *Id.* (citing Exs. 1F, pp. 5-6; 4F, pp. 8, 30; 5F, p. 6).

Thus, the ALJ's persuasiveness analyses under the RFC section of her written decision, together with the ALJ's PRT analysis under the step-two section of the decision,[13] convince the Court that the ALJ, in not incorporating any mental limitations in the RFC, considered her PRT findings and the relevant evidence in the record (as mentioned earlier, some of the evidence considered in the PRT and RFC analyses overlaps). Indeed, the ALJ wrote that "[t]he following [RFC] assessment reflects the degree of limitation the undersigned has found in the '[P]aragraph B' mental function analysis." Tr. at 18. To be sure, at the conclusion of her RFC analysis, the ALJ could have expressly stated something to the effect that the evidence does not support incorporating mental limitations in the RFC, but that statement is implicit in her ultimate formulation of Trillo's RFC, which does not include any mental limitations. The Court therefore can tell from the ALJ decision that she concluded that the record evidence does not support incorporating any mental limitations in the RFC.

Accordingly, taking "common sense, not technical perfection, [a]s our guide," *Keyes-Zachary*, 695 F.3d at 1167, the Court finds that the ALJ appropriately considered the record evidence regarding Trillo's mental impairments and limitations and that her written decision provides an adequate "logical bridge" between the evidence and her RFC determination, *Price*, 401 F. App'x at 986; *see also Keyes-Zachary*, 695 F.3d at 1166 ("Where, as here, we can follow

---

[13] *Cf. Belk v. Colvin*, 648 F. App'x 452, 454–55 (5th Cir. 2016) (looking to ALJ's discussion of medical evidence "in a different part of her decision" to assess whether the ALJ provided adequate explanation of her findings at step three); *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 456–57 (6th Cir. 2016) (looking to ALJ's detailed discussion of treatment records "[e]lsewhere in her decision" to assess whether the ALJ adequately explained why she found that a treating physician's opinion was not consistent with the past treatment records).

the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal."). The Court overrules Trillo's second assignment of error.

To boot, Trillo, who had the burden to prove her RFC at the administrative level,[14] does not identify any particular evidence that the ALJ failed to consider or explain why the record does not support the ALJ's RFC determination insofar as it is silent about mental limitations.[15] In arguing that the ALJ's failure to incorporate Trillo's mild mental limitations in the RFC or the ALJ's failure to explain why these limitations were not included in the RFC are "especially important," Trillo cites several pieces of evidence, but all of them, save for one, were expressly considered by the ALJ. Pl.'s Br. at 13–14. For example, Trillo points out that on her functional report, in response to the question, "how well do you handle stress?" she reported "not good at all," and in response to the question, "how well do you handle changes in routine?" she reported "not good." Tr. at 283. But the ALJ expressly considered those responses under her PRT analysis, writing, "[t]he claimant reported difficulty handling stress or changes in routine," *id.* at 18 (citing Ex. 7E at 9, *i.e.*, Tr. at 283). Trillo thus invites the court to reweigh the evidence, which it may not do.[16] The one exception is that at the hearing, when Trillo's counsel asked her

---

[14] *See Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) ("The claimant has the burden to prove his residual functional capacity."); *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) ("The burden of proof lies with the claimant to prove disability under the first four parts of the inquiry.").

[15] *See Woods v. Kijakazi*, 32 F.4th 785, 794 (9th Cir. 2022) (rejecting plaintiff's argument that the ALJ failed to include any mental limitations in the RFC, noting that the plaintiff "does not identify any particular evidence that the ALJ failed to consider or explain why the record does not support the ALJ's findings regarding her mental functioning"); *Suttles*, 543 F. App'x at 826 (rejecting plaintiff's argument that his non-severe mental impairment was not considered in the ALJ's RFC, observing that the plaintiff "does not challenge particular aspects of the ALJ's discussion of the evidence, nor cite to specific evidence in the record that the ALJ should have but did not address").

[16] *Cf. Nasser v. Comm'r of Soc. Sec.*, No. 22-1293, 2022 WL 17348838, at *2 (6th Cir. Dec. 1, 2022) (unpublished) (deeming the argument that the ALJ incorrectly assessed the persuasiveness of a medical opinion as a "veiled attempt to have us reweigh the evidence"); *Miller v. Kijakazi*, No. 22-60541,

if she had "[a]ny symptoms of depression or anxiety?" she testified that "there's a lot of things going through my head," *id*. at 59, but Trillo fails to point to any evidence that suggests how, if at all, the symptom testified to limits her mental functioning in a work setting. In any event, the ALJ's failure to expressly mention that testimony in her written decision does not establish that she did not consider it. *See Castillo*, 151 F. App'x at 335, *supra*.

Finally, even if the ALJ erred by not incorporating any mental limitations in the RFC or by not adequately explaining why they were not incorporated in the RFC, Trillo fails to show that the errors were prejudicial. A court will not reverse an ALJ's decision unless an error was prejudicial. *Graves v. Colvin*, 837 F.3d 589, 592–93 (5th Cir. 2016). The court "will find prejudice only where an error has affected [the] claimant's substantial rights." *Bailey v. Saul*, 853 F. App'x 934, 936 (5th Cir. 2021). "Where the resulting disability determination remains unchanged, . . . no substantial rights have been affected." *Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009); *see also Keel*, 986 F.3d at 556 ("Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err."). The burden is on the plaintiff-claimant to show that the ALJ's error was prejudicial. *Jones v. Astrue*, 691 F.3d 730, 734 (5th Cir. 2012).

To show prejudice, Trillo argues that her mild limitations in the functional area of concentration, persistence, or pace would have an impact on her ability to work in "semiskilled" positions, but the ALJ, Trillo points out, determined at step four that she could perform her past relevant work as a household appliance salesperson (DOT 270.357-034), which is a semiskilled occupation with a Specific Vocational Preparation ("SVP") rating of 4. Pl.'s Br. at 15–16.

---

2023 WL 234773, at *4 (5th Cir. Jan. 18, 2023) (unpublished) (stating that plaintiff "is essentially asking [the court] to reweigh the evidence to show that she was prejudiced by the ALJ's failure to explain, which we cannot do").

Curiously, Trillo overlooks that the ALJ identified a second job as her past relevant work: namely, cashier II (DOT 211.462-010). Tr. at 26. The VE testified[17] that the cashier job is an "unskilled" occupation with an SVP of 2, Tr. at 26, 64.[18] The required capacity to perform unskilled work includes the mental ability to "[m]aintain attention for extended periods of two-hour segments but "concentration is not critical." Program Operations Manual System ("POMS") DI 25020.010 § B.3.d (S.S.A.), https://secure.ssa.gov/poms.nsf/lnx/0425020010 (last visited Oct. 19, 2024).[19] At the administrative hearing, the ALJ propounded an alternative hypothetical based on the RFC but modified to include the limitation that the hypothetical individual "can attend and concentrate for extended periods of up to two-hour intervals," and the VE responded that such an individual could perform the past relevant work as a cashier. Tr. at 69–70.

---

[17] Although a vocational expert is not required to make a step-four determination, "it is within the [Commissioner's] discretion to rely on the opinions of a vocational expert." *Thomas v. Shalala*, 56 F.3d 1385 (5th Cir. 1995) (unpublished but precedential pursuant to 5th Cir. R. 47.5.3) (citing *Greenspan v. Shalala*, 38 F.3d 232, 239 (5th Cir. 1994) (affirming determination, based in part on testimony of vocational expert, that claimant was able to perform past relevant work)); *see also* SSR 00-4p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000) ("We may . . . use VEs . . . at . . . steps [four and five] to resolve complex vocational issues.").

[18] According to the Department of Labor's "Dictionary of Occupational Titles" ("DOT"), the job of cashier II has an SVP of 2, *see* DOT § 211.462-010, 1991 WL 671840 (rev. 4th ed. 1991), which means that it takes "[a]nything beyond short demonstration up to and including 1 month" for a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation, *id.*, App. C, 1991 WL 688702. "Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2." SSR 00-4p, 2000 WL 1898704, at *3. "Unskilled work generally requires only the following: (1) 'understanding, remembering, and carrying out simple instructions'; (2) 'making judgments that are commensurate with the functions of unskilled work—i.e., simple work-related decisions'; (3) 'responding appropriately to supervision, co-workers and usual work situations'; and (4) 'dealing with changes in a routine work setting.'" *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) (brackets omitted) (quoting SSR 96-9p, 1996 WL 374185, at *9 (S.S.A. July 2, 1996)).

[19] *See Buck v. Berryhill*, 869 F.3d 1040, 1050–51 (9th Cir. 2017) ("Although not binding law, the Social Security Administration's Program Operations Manual System . . . is persuasive authority."); *see also, e.g.*, *Barrett v. Berryhill*, 906 F.3d 340, 344 (5th Cir. 2018) (citing POMS); *Smith v. Soc. Sec. Admin.*, 538 F. App'x 484, 487 (5th Cir. 2013) (same).

Consequently, it appears, and Trillo does not contend otherwise, that despite Trillo's "mild" limitations in the functional area of concentration, persistence, or pace, she can perform her past relevant work as a cashier. *See Jaramillo v. Colvin*, 576 F. App'x 870, 875–76 (10th Cir. 2014) (A "mild limitation in the ability to concentrate and persist at simple tasks" does not "exceed[] the basic mental demands of unskilled work."). As such, the ALJ's step-four determination that Trillo can perform her past relevant work remains unchanged, even if, as Trillo posits, she could not perform her past relevant work as a household appliance salesperson. *See Wells v. Colvin*, 727 F.3d 1061, 1074 (10th Cir. 2013) ("[E]ven if [claimant] could only perform the job of bookkeeper," which was one of four jobs that ALJ found constituted past relevant work, "that job is sufficient to support the ALJ's step-four determination."); *Lind v. Astrue*, 370 F. App'x 814, 817 (9th Cir. 2010) ("Any error by the ALJ in considering jobs that did not qualify as past relevant work was harmless because the ALJ found that [the claimant] could perform her past relevant work as a customer service representative, and the ability to perform one of her past jobs is sufficient to meet the standard."). Trillo has failed to establish that the ALJ's errors, if any, were prejudicial.

## V. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**.

**So ORDERED and SIGNED this  1st  day of November 2024.**

_____
**ANNE T. BERTON
UNITED STATES MAGISTRATE JUDGE**